**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA**

CURTIS BALDWIN,            )
                           )
            Petitioner,    )
                           )
      v.                   )     1:11CV1035
                           )
BUTCH JACKSON,             )
                           )
            Respondent.    )

**MEMORANDUM OPINION AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE**

Petitioner, a prisoner of the State of North Carolina, seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254. (Docket Entry 1.) On September 16, 2009, in the Superior Court of Hoke County, Petitioner pled guilty to eluding arrest, assault with a deadly weapon on a government official, driving while license revoked, failure to stop at a stop sign, reckless driving and habitual felon status in cases 09 CRS 265 and 50048 through 50051. (Docket Entry 1, ¶¶ 1, 2, 4-6; see also Docket Entry 5, Exs. 1-3. The trial court consolidated the offenses into one Class C felony and sentenced Petitioner in the mitigated range to 100 to 129 months in prison. (Docket Entry 1, ¶ 3; see also Docket Entry 5, Ex. 3.)

Petitioner appealed (Docket Entry 1, ¶¶ 8, 9; see also Docket Entry 5, Exs. 4-7), and the North Carolina Court of Appeals affirmed his convictions. State v. Baldwin, No. COA10-208, 2010 N.C. App. LEXIS 1655 (Sept. 7, 2010) (unpublished). Petitioner did not thereafter submit a petition for discretionary review to the

North Carolina Supreme Court or petition the United States Supreme Court for a writ of certiorari. (Docket Entry 1, ¶ 9(g).)

Petitioner then submitted a pro se motion for appropriate relief ("MAR") to the state trial court (Docket Entry 1 at 5-6, 7; see also Docket Entry 5, Ex. 8),[1] which he dated as signed on January 31, 2011[2] (see Docket Entry 5, Ex. 8 at 12, 14).[3] The trial court summarily denied the MAR by order dated February 10, 2011, and filed February 15, 2011. (Docket Entry 1 at 6, 7; see also Docket Entry 5, Ex. 9.)

Petitioner then filed a pro se "Motion for Correction of Error" with the North Carolina Court of Appeals which that court treated as a petition for a writ of certiorari. (Docket Entry 1 at 6, 7-8; see also Docket Entry 5, Ex. 10.) Petitioner dated the motion as submitted on April 18, 2011 (Docket Entry 5, Ex. 10 at 5, 6), and the Court of Appeals stamped it as filed on April 25, 2011 (id. at 2). The Court of Appeals denied Petitioner's certiorari petition by order dated May 17, 2011. (Docket Entry 5, Ex. 12.)[4]

---

[1] For portions of the Petition lacking paragraph numbers, pin citations refer to the page number in the footer appended to said document by the CM/ECF system.

[2] Petitioner's MAR does not bear a file-stamp. (Docket Entry 5, Ex. 8.) The trial court's order denying the MAR reflects the filing of the MAR on January 3, 2011 (Docket Entry 5, Ex. 9 at 2), an apparent typographical error, given that Petitioner dated the MAR as submitted on January 31, 2011 (Docket Entry 5, Ex. 8 at 12, 14).

[3] For attachments to Respondent's memorandum in support of his instant Motion for Summary Judgment, pin citations refer to the page number in the footer appended to said document by the CM/ECF system.

[4] Petitioner asserts in his Petition that he filed a petition for a writ of mandamus on August 26, 2011, which a court Petitioner did not identify denied by order dated September 8, 2011. (Docket Entry 1 at 6, 8.) The materials
(continued...)

Petitioner thereafter submitted his Petition in this Court (Docket Entry 1), which he dated as signed on October 20, 2011 (id. at 14), and which the Court stamped as filed on November 25, 2011 (id. at 1). Respondent moved for summary judgment on the merits (Docket Entry 4) and Petitioner filed a responsive motion for summary judgment and brief in support (Docket Entries 7, 8).

## **Facts**

The facts of the case, as set out in Petitioner's appellate brief, are as follows:

> On January 6, 2009, Joe Harris called 911 and reported a suspicious vehicle, a red pick-up truck, in the McLean Loop area. Mr. Harris saw the red pick-up truck in his brother's driveway, whose home was in the McLean Loop area, and a man who he identified as [Petitioner] knocking on the front door.
>
> Deputy McPherson of the Hoke County Sheriff's Department responded to the 911 call. According to Deputy McPherson, he encountered a red pick-up truck as it was leaving McLean Loop and he was entering it. As the two vehicles faced each other, Deputy McPherson stepped out of his patrol car and, according to Deputy McPherson, the red pick-up truck came towards him. Deputy McPherson re-entered his patrol car and the red pick-up truck struck the side of his patrol car. According to the State, the accident report was "not accurate." The red pick-up truck hit the side of the patrol car when the red pick-up truck "bounced" from having hit a fence. The State explained that [Petitioner] may have struck the patrol car but he did not "hit directly into the patrol car."
>
> A chase between Deputy McPherson and the red pick-up truck then ensued which crossed into Robeson County. Deputy Larry Hunt with the Robeson County Sheriff's Office responded and placed stop sticks but the driver of the red pick-up succeeded in avoiding them. Deputy

---

[4](...continued)
submitted to the Court by the parties do not contain copies of this writ or the order denying it.

McPherson, however, wrecked his car trying to avoid the stop sticks.

An unnamed individual saw Deputy Hunt putting away the stop sticks and was passed by the red pick-up truck. For reasons not clear from the record, the unnamed individual followed the red pick-up truck to Lombardy Village Drive in Robeson County. The unnamed individual saw the red pick-up truck park in front of a house and then saw two individuals step out of the truck and enter the house.

The unnamed individual returned to where he had last seen Deputy Hunt and shared with him information of the whereabouts of the red pick-up truck. Numerous officers went to the house on Lombardy Village Drive and spoke with Conrad McLean, the owner of the house where the red pick-up truck had parked. The officers also communicated with Steven Bowen, whose father owned the red pick-up truck and was present at Mr. McLean's home when the officers arrived. Mr. Bowen told the officers that he had driven the red pick-up truck to Mr. McLean's home that morning and that [Petitioner] had borrowed it. According to Mr. Bowen, [Petitioner] left in the red pick-up truck with Shawanna Collins, they were gone for approximately two hours, and [Petitioner] returned the keys to Mr. Bowen when he returned.

Deputy Hunt asked [Petitioner] to remain inside Mr. McLean's home but, according to Deputy Hunt, [Petitioner] left while Deputy Hunt was talking to others present. [Petitioner] was found down the street in an abandoned vehicle and was arrested.

After [Petitioner] was arrested, officers learned that [Petitioner]'s license had been revoked. According to Deputy McPherson, [Petitioner] ran a stop sign at North Old Wire Road and that while driving the pick-up trick on Chason Road his speed exceeded 100 miles per house. The facts used to support felonious speeding to elude arrest included 1) driving 15 miles over speed limit; 2) driving reckless because of the stop signs taken [sic] in Hoke and Robeson counties; and 3) driving with revoked license.

With respect to the habitual felon charge, the State presented the following three felony convictions: (1) on February 1, 1994, [Petitioner] was convicted in Hoke County of possessing cocaine on November 22, 1992 in case number 92CRS4853; (2) on October 9, 2001, [Petitioner] was convicted in Hoke County of the May 12, 2001 second-

degree kidnapping in file number 01CRS003047; (3) on
October 23, 2007, [Petitioner] was convicted in Hoke
County for the July 21, 2007 breaking and entering in
file number 07CRS51957.

    After hearing the State's factual basis summary, the
trial court found there was a factual basis for the
guilty plea. The trial court also found that
[Petitioner] was satisfied with his lawyer and that
[Petitioner] was competent to stand trial. The trial
court further found that [Petitioner]'s plea was an
informed choice and that it was made freely, voluntarily,
and understandingly. The trial court accepted
[Petitioner]'s guilty plea.

(Docket Entry 5, Ex. 6 at 6-9 (internal citations to the appellate record omitted).)

## Claims

Petitioner raises two claims for relief in his Petition: (1) the state trial court, in denying his MAR, violated Petitioner's due process rights under the Fifth and Fourteenth Amendments by failing to conduct an inquiry into Petitioner's claims that he wanted to represent himself and that his trial counsel coerced him into pleading guilty; and (2) he suffered ineffective assistance of his trial counsel. (Docket Entry 1 at 5, 6-7, 16-19.)

## Standard of Review

Where a state trial court adjudicated a petitioner's claims on their merits, this Court must apply 28 U.S.C. § 2254(d)'s highly deferential standard of review to such claims. That statute precludes habeas relief in cases where a state court has considered a claim on its merits unless the decision was contrary to or involved an unreasonable application of clearly established federal law as set out by the United States Supreme Court or the state

court decision was based on an unreasonable determination of the facts. A state court decision is "contrary to" Supreme Court precedent if it either arrives at "a conclusion opposite to that reached by [the Supreme] Court on a question of law" or "confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite" to that of the Supreme Court. Williams v. Taylor, 529 U.S. 362, 406 (2000). A state decision "involves an unreasonable application" of Supreme Court law "if the state court identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular state prisoner's case." Id. at 407. "Unreasonable" does not mean simply "incorrect" or "erroneous" and the Court must judge the reasonableness of the state court's decision from an objective, rather than subjective, standpoint. Id. at 409-11. Finally, state court findings of fact are presumed correct unless rebutted by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

## Discussion

### I. Claim One

Petitioner first claims that, prior to his guilty plea, he mailed a letter to the state trial court which indicated dissatisfaction with his trial counsel, a belief that his trial counsel had been overly "persistent" about Petitioner accepting a plea deal of 10 to 12 years in prison, a desire to represent himself, and a readiness to proceed to trial pro se. (Docket Entry

-6-

1 at 5, 16-17; see also Docket Entry 1-1 at 29.)[5] Petitioner essentially claims that his trial counsel continued to represent him against his wishes and coerced him into pleading guilty. (Docket Entry 1 at 5, 16-17.) Petitioner raised that claim in his MAR (Docket Entry 5, Ex. 8), and he now asserts in the instant Petition that the state trial court erred by denying that claim without "conduct[ing] an inquiry" into the matter (Docket Entry 2 at 17; see also Docket Entry 8 at 5).[6]

Petitioner's contention fails, because "[c]laims of error occurring in a state post conviction proceeding cannot serve as a basis of federal habeas corpus relief." Bryant v. Maryland, 848 F.2d 492, 493 (4th Cir. 1988); accord Lawrence v. Branker, 517 F.3d 700, 717 (4th Cir. 2008); Wright v. Angelone, 151 F.3d 151, 159 (4th Cir. 1998). Further, to the extent Petitioner's instant claim attacks the underlying voluntariness of his guilty plea rather than the state trial court's denial of such a claim in his MAR, the claim still fails. "[R]epresentations of the defendant, his lawyer, and the prosecutor at . . . a [plea] hearing as well as any

---

[5] The letter bears the salutation "Hello Mr. or Mrs. D.A." and reflects the stamp "RECEIVED June 4, 2009." (Docket Entry 1-1 at 29.) However, the stamp does not indicate which entity or office actually received the letter on that date. (See id.)

[6] Petitioner has failed to exhaust his state court remedies with respect to this claim, as he could not have raised the claim on direct appeal and has not raised it via MAR in the state courts. See Robinson v. Lewis, No. 5:12-HC-2021-F, 2013 WL 1182658, at *6 (E.D.N.C. Mar. 21, 2013) (unpublished) (holding state remedies exhausted by either pursuing a direct appeal through the North Carolina Supreme Court or by filing a MAR in the state trial court and appealing its denial to the North Carolina Court of Appeals); Simpson v. Branker, No. 3:11-cv-348-RJC, 2012 WL 4321294, at *3 (W.D.N.C. Sept. 20, 2012) (unpublished) (same). Nevertheless, the Court may deny this unexhausted claim on the merits. 28 U.S.C. § 2254(b)(2).

findings made by the judge accepting the plea constitute a formidable barrier in subsequent collateral proceedings." Blackledge v. Allison, 431 U.S. 63, 73-74 (1977). A petitioner challenging his plea "necessarily . . . assert[s] that not only his own transcribed responses, but [also] those given by two lawyers, were untruthful . . . ." Id. at 80 n.19. "In the absence of clear and convincing evidence to the contrary, [a petitioner] must be bound by what he said at the time of the plea." Little v. Allsbrook, 731 F.2d 238, 239 n.2 (4th Cir. 1984).

Here, Petitioner's claim that his trial counsel coerced his guilty plea contradicts both the transcript of plea form, signed by Petitioner under oath, and his sworn testimony at the plea hearing. (Docket Entry 5, Exs. 1, 2.) Petitioner swore that he understood the nature of the charges against him and each element of the charges, his trial counsel had discussed possible defenses to the charges with him, he was "in fact guilty," no one promised him anything or threatened him in any way to cause him to enter the plea against his wishes, and he entered the plea of his own free will, fully understanding his actions. (Docket Entry 5, Ex. 1 at 2-3; Ex. 2 at 5, 7-8.) Petitioner further indicated that he did not have any questions about the plea colloquy or about anything else connected to his case. (Docket Entry 5, Ex. 1 at 3; Ex. 2 at 9.) Petitioner's trial counsel and the prosecutor each certified that during a pre-trial conference, Petitioner had agreed to plead guilty as charged. (Docket Entry 5, Ex. 1 at 3, 4.) Petitioner's trial counsel further certified that he fully explained to

-8-

Petitioner the nature and elements of the charges and the aggravating and mitigating factors and prior record points for sentencing. (Id. at 3.) Petitioner's conclusory and unsupported statements in his Petition that his counsel coerced his plea (Docket Entry 1 at 5) fall far short of the "clear and convincing evidence" necessary for this Court to disregard his sworn and unambiguous statements, and those of his counsel and the prosecutor, to the contrary at the plea hearing. Allsbrook, 731 F.2d at 239 n.2.

To the extent Petitioner brings an independent claim that the State and/or his trial counsel violated his right to self-representation, that claim similarly lacks merit. The United States Supreme Court recognized that a criminal defendant has a constitutional right to proceed without counsel when he voluntarily and intelligently elects to do so, and that the state may not force a lawyer upon him when he insists that he wants to conduct his own defense. Faretta v. California, 422 U.S. 806, 835-36 (1975). However, that right can "be waived through conduct indicating that one is vacillating on the issue or has abandoned one's request altogether." Williams v. Bartlett, 44 F.3d 95, 100 (2d Cir. 1994); see also McKaskle v. Wiggins, 465 U.S. 168, 182 (1984) (observing that "[a] defendant can waive his Faretta rights"); Dorman v. Wainwright, 798 F.2d 1358, 1365-66 (11th Cir. 1986) (recognizing that "unlike other constitutional rights, the right to be one's own counsel can easily be overlooked or waived if a

defendant does not properly invoke the right or inadvertently waives it through some procedural misstep").

Here, notwithstanding any earlier dissatisfaction with his trial counsel, Petitioner appeared at his plea hearing alongside his counsel, made no motion to represent himself to the state trial court, and testified under oath at his plea hearing that his trial counsel had discussed possible defenses to the charges with him and that he was satisfied with his trial counsel's services. (Docket Entry 5, Ex. 2 at 4; see also Docket Entry 5, Ex. 1 at 2.) Petitioner further indicated that he did not have any questions about his case. (Docket Entry 5, Ex. 1 at 3; Ex. 2 at 9.) Under these circumstances, Petitioner clearly waived his right to self-representation.[7]

In sum, the state trial court's decision rejecting Petitioner's claims that his counsel coerced his guilty plea and that the State and/or his counsel violated his right to self-representation was neither contrary to nor an unreasonable application of established Supreme Court precedent and was not based on an unreasonable determination of the facts from the record. Claim One thus lacks merit.

---

[7] Authority exists for the proposition that an unconditional guilty plea waives any nonjurisdictional constitutional claims arising out of proceedings prior to the plea. Tollett v. Henderson, 411 U.S. 258, 267 (1973) (ruling that knowing and voluntary guilty plea waives claims of violations of nonjurisdictional constitutional rights); United States v. Moussaoui, 591 F.3d 263, 279 (4th Cir. 2010) (holding that unconditional guilty plea, in and of itself, waives all nonjurisdictional defects in proceedings conducted prior to entry of plea, including claimed violation of right to self-representation); accord Werth v. Bell, 692 F.3d 486, 495-96 (6th Cir. 2012) (recognizing Moussaoui as holding that defendant waives self-representation claim by entering knowing and voluntary unconditional guilty plea).

**II. Claim Two**

Petitioner's second claim alleges ineffective assistance of his trial counsel based upon counsel insisting that Petitioner accept a plea deal of 10 to 12 years in prison, failing "to suppress statements, not doing anything, [and having] too many cases to handle [and] no time to investigate the issues." (Docket Entry 1 at 6-7, 18-19.) To establish ineffective assistance of counsel in the context of a guilty plea, a habeas petitioner must show a professional dereliction by counsel and a reasonable probability that an objectively reasonable person in the petitioner's position would have not pleaded guilty but would have insisted on going to trial, absent the alleged dereliction. See Hill v. Lockhart, 474 U.S. 52, 57-59 (1985) (applying Strickland v. Washington, 466 U.S. 668 (1984)). Further, "counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." Strickland, 466 U.S. at 690. "Moreover, to obtain relief on this type of claim, a petitioner must convince the court that a decision to reject the plea bargain would have been rational under the circumstances." Padilla v. Kentucky, 559 U.S. ___, ___, 130 S. Ct. 1473, 1485 (2010) (citing Roe v. Flores-Ortega, 528 U.S. 470, 480, 486 (2000)). This determination requires an objective assessment of "the likely outcome of a trial had the defendant not pleaded guilty." Meyer v. Branker, 506 F.3d 358, 369 (4th Cir. 2007) (citing Hill, 474 U.S. at 59-60, and Hooper v. Garraghty, 845 F.2d 471, 475 (4th Cir. 1988)).

-11-

Finally, when (as in this case) a federal habeas court reviews an ineffective assistance of counsel claim under § 2254(d), the "state court must be granted a deference and latitude that are not in operation when the case involves review under the Strickland standard itself." Harrington v. Richter, ___ U.S. ___, ___, 131 U.S. 770, 785 (2011). "The pivotal question is whether the state court's application of the Strickland standard was unreasonable. This is different from asking whether defense counsel's performance fell below Strickland's standard." Id. at ___, 131 S. Ct. at 786. Simply put, "[t]he standards created by Strickland and § 2254(d) are both highly deferential and when the two apply in tandem, review is doubly so." Id. at ___, 131 S. Ct. at 788 (internal citations and quotation marks omitted).

Here, Petitioner's ineffective assistance claim is entirely conclusory. Petitioner does not detail, either in his Petition or in his responsive motion for summary judgment, what evidence his attorney should have moved to suppress or the grounds for such a motion. (Docket Entry 1 at 6-7, 18-19; see also Docket Entry 8 at 6-7.) Further, Petitioner describes no evidence or witnesses that his counsel should have investigated and presents no facts to support his assertion that his counsel was too busy to investigate his case. Petitioner does not even attempt to persuade the Court that a rational basis existed for rejecting the plea deal, or that the outcome at a trial would have been more favorable to him. Petitioner's bare and unsupported allegations that his attorney failed him warrant no relief. See Nickerson v. Lee, 971 F.2d 1125,

-12-

1136 (4th Cir. 1992), <u>abrogation on other grounds recognized</u>, <u>Yeatts v. Angelone</u>, 166 F.3d 255, 266 n.4 (4th Cir. 1999).

In sum, the state trial court's decision rejecting Petitioner's claim that his counsel provided ineffective assistance was neither contrary to nor an unreasonable application of established Supreme Court precedent and was not based on an unreasonable determination of the facts from the record. Claim Two thus lacks merit.

**IT IS THEREFORE RECOMMENDED** that Respondent's Motion for Summary Judgment (Docket Entry 4) be **GRANTED,** that Petitioner's Motion for Summary Judgment (Docket Entry 7) be **DENIED,** that the Petition (Docket Entry 1) be **DENIED,** and that this action be **DISMISSED.**

<u>         /s/ L. Patrick Auld         </u>
**L. Patrick Auld**
**United States Magistrate Judge**

May 30, 2013